## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

JOHN DAVID PALMER,         )
                                       )

        Plaintiff,         )
                                       )

        vs.              )       **Case No.  CIV-09-824-F**
                                       )

**BOARD OF COMMISSIONERS**   )
**FOR PAYNE COUNTY OKLAHOMA,**  )
**et al.,**                       )
                                       )

        Defendants.      )

## REPORT AND RECOMMENDATION

Plaintiff, John David Palmer, has brought this action pursuant to 42 U.S.C. § 1983 seeking damages for the alleged violation of his constitutional rights during his confinement as a pretrial detainee in the Payne County Detention Center ("PCDC") [Doc. No. 16, Amended Complaint].  Named Defendants are Payne County Sheriff Noel Bagwell ("Sheriff") in his official capacity, Payne County Jail Administrator Brandon Myers ("Myers")  in his individual and official capacities, and Payne County Deputy Sheriff Mark Hall ("Hall") in his official and individual capacities.[1]  *Id.* at p. 1.  While Plaintiff maintains that he contracted methicillin-resistant *staphylococcus aureus* ("MRSA") during his incarceration at the facility, he has affirmatively stated in his response to the summary judgment motion now at issue [Doc. No. 42] that "[a]t this point in time Plaintiff is not

---

[1]The Board of County Commissioners for Payne County was named as a Defendant in the amended complaint but was subsequently dismissed at Plaintiff's request [Doc. Nos. 33 and 34].

alleging that the actions of Defendants caused him to contract MRSA."[2] [Doc. No. 47, p. 2].

Instead,

> Plaintiff alleges that Defendants Hall and Myers were deliberately indifferent to his medical needs after he contracted or developed . . . MRSA . . . [and] that Defendant Sheriff . . . was deliberately indifferent to his medical needs by virtue of a policy and practice of failing to train and supervise Defendant Myers, Hall, and other employees with regards to identification and provision of medical care to inmates at the jail who contracted staph infection or other contagious diseases.

*Id.*

The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is recommended that summary judgment be granted in favor of Defendant Sheriff in his official capacity[3]; granted in favor of Defendant Hall in his individual and official capacities; granted in favor of Defendant Myers in his official capacity; and, denied in part and granted in part as to Defendant Myers in his individual capacity.

**Plaintiff's Amended Complaint**

Factually, Plaintiff maintains that beginning on July 7, 2007, and ending on August 3, 2007, he made "daily and repeated requests for medical treatment for his rapidly increasing MRSA," [Doc. No. 16, ¶ 17], both in writing and in person to Jail Administrator Myers, *id.* at ¶ 6, to Defendant Hall – who Plaintiff describes as having direct responsibility

---

[2]Unless otherwise indicated, quotations in this report are reproduced verbatim.

[3]Defendant Sheriff was not sued in his individual capacity [Doc. No. 16, p. 2].

for his medical care, *id.* at ¶ 7 – and to other unknown PCDC personnel.  He further contends that "his condition and requests for medical treatment and assistance were ignored by Defendants for so long that when he was finally taken to the hospital on August 3 of 2007, [he] had to be placed under general anesthesia and the infected and gangrenous areas on three parts of his body had to be surgically excised." *Id.* at ¶ 18.[4]

## John Doe Defendants

Plaintiff's amended complaint describes unknown defendants who "were at all times mentioned herein officers and/or employees of the Payne County Sheriff and were directly responsible for the care and custody of Plaintiff, and participated in the mistreatment of Plaintiff . . . in their individual and official capacities." [Doc. No. 16, ¶ 8].  Plaintiff has failed to address or in any manner contest the ninth proposition in the motion at issue that "Plaintiff's claims against the John Doe Defendants must be dismissed, because he failed to timely identify and serve these individuals with process."   [Doc. No. 42, p. 36].  In the absence of any opposition by Plaintiff, *see* LCvR7.1(g),  Defendants' motion is deemed confessed, and dismissal of the John Doe Defendants is recommended.

## Official Capacity Claims

In their seventh proposition, Defendants Hall and Myers request summary judgment or dismissal with regard to Plaintiff's claims against them in their official capacities [Doc.

---

[4]Plaintiff alleged that Defendants acted "individually and in concert with one another[.]" [Doc. No. 16, ¶ 9].  He has failed, however, to point to evidence of any concerted action.

No. 42, pp. 33 - 34].  These Defendants maintain that official capacity claims are not properly asserted against them because they lack final policymaking authority.  *Id.*  As Plaintiff did not oppose this portion of Defendants' motion, Defendants' dismissal request is confessed, and dismissal of Plaintiff's official capacity claims against Defendants Hall and Myers is recommended.  *See* LCvR7.1(g).

## Negligence Claims

Defendants argue in their tenth proposition that Plaintiff may not bring negligence-based tort claims against them if that, in fact, is what Plaintiff intends when he states that Defendants treated him with "neglect." [Doc. No. 42, p. 38, citing Doc. No. 16, ¶ 1]. Plaintiff made no response to this proposition, and his complaint has been construed solely as a § 1983 action.

## Punitive Damages

Although Defendants concede in their eighth proposition that punitive damages may be awarded in certain circumstances in § 1983 actions, they maintain that Plaintiff has failed to demonstrate his entitlement to punitive damages in this case.  *Id.* at pp. 35-36.  Any such finding is dependent on the evidence at trial and would be premature at this stage of the litigation.

## Standard of Review[5]

---

[5]The standard of review applicable to Plaintiff's claims against Defendants Hall and Myers in their individual capacities is subsequently discussed in connection with the qualified immunity defense asserted by those two Defendants.  Qualified immunity is only
(continued...)

Summary judgment may be granted only where the pleadings and any discovery materials and affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In considering a motion for summary judgment, the court must view the facts and inferences drawn from the record in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382,* 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted). Nonetheless, the Supreme Court has determined that

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Additionally, when an affirmative defense is asserted in a motion for summary judgment, Defendants "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant[s] meet[] this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Id.* "If the plaintiff fails to make such

---

[5](...continued)
available in suits against officials sued in their individual capacities. *See Starkey ex rel. A.B. v. Boulder County Social Servs.,* 569 F.3d 1244, 1263 n.4 (10th Cir. 2009).

a showing, the affirmative defense bars his claim, and the defendant[s] [are] then entitled to summary judgment as a matter of law." *Id.*

**Statute of Limitations Defense and the Continuing Violation Doctrine**

As Defendants correctly assert in their initial proposition, the limitations period for a civil rights action is governed by the forum state's law pertaining to personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 - 80 (1985). In Oklahoma, that limitations period is two years. *See Meade v. Grubbs,* 841 F.2d 1512, 1522 (10th Cir. 1988). Because Plaintiff filed this action on July 31, 2009 [Doc. No. 1], Defendants argue that "Plaintiff is barred from complaining about any fact or issue which occurred prior to July 31, 2007, which is two years preceding the date he filed the Complaint in this case." [Doc. No. 42, p. 15]. In response, Plaintiff maintains that under the "doctrine of continuing torts," [Doc. No. 47, p. 13], "Defendants' conduct of denying Plaintiff medical attention began in early July of 2007 and continued until it ended on August 4, 2007 [and that] Defendants are liable for any conduct that constitutes continued denial of medical care, however, Plaintiff may only recover damages incurred after July 31, 2007." *Id.* at p. 14.

The continuing violation doctrine "is a creation of federal law that arose in Title VII cases [and] recognizes that certain violations are continuing in nature and provides that a claim asserting such a violation is timely if administrative charges are filed within the period applicable to the last act in the continuing series." *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997). "To establish a continuing violation, a plaintiff must show that the claimed discriminatory acts that occurred outside the limitations period were sufficiently

related to at least one act occurring within the relevant filing period, thereby constituting a continuing pattern of discrimination. *Frazier v. Jordan,* No. 06-1333, 2007 WL 60883, at *4 (10th Cir. Jan. 10, 2007)(citation omitted)(unpublished op.). The Tenth Circuit Court of Appeals has not determined whether the continuing violations doctrine is applicable to a § 1983 claim. *Id. See also Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (declining to determine if the doctrine is applicable to § 1983 suits); *but see Parkhurst v. Lampert*, 264 Fed. Appx. 748, 749(10th Cir. 2008) ("Assuming the continuing violation doctrine applies to § 1983 claims, the doctrine is triggered by continual unlawful acts, not by continual ill effects from the original violation.") (internal citation and quotation omitted) (unpublished op.).

In order for the continuing violations doctrine to apply, there must be at least one wrongful act within the statutory filing period. *See McCormick v. Farrar*, 147 Fed. Appx. 716, 720 (10th Cir. 2005); *see also Burkley v. Correctional Healthcare Management of Oklahoma, Inc.,* 141 Fed. Appx. 714, 716 (10th Cir. 2005) ("The continuing violation doctrine permits a court to look backwards to the entirety of a continuing wrong to assess its cumulative effect, so long as an injurious act falls within the statute of limitations period."). Thus, without determining whether the continuing violation doctrine applies to a § 1983 case, Plaintiff's evidence as to each of the three Defendants can first be evaluated to determine whether Plaintiff has established for purposes of summary judgment that a particular Defendant committed at least one wrongful act within the statute of limitations period, in this

case from July 31, 2007, until August 4, 2007, the date on which Plaintiff was released from Payne County's custody.

## Deliberate Indifference

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including access to the basic necessities of medical care. *See Farmer v. Brennan,* 511 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).[6] The United States Supreme Court has made clear that "deliberate indifference to serious medical needs of prisoners constitut[ing] the 'unnecessary and wanton infliction of pain,'" may amount to a violation of the Eighth Amendment. *Id.* at 104 (citation omitted). This deliberate indifference standard has two components: (1) an objective component in which the plaintiff's pain or deprivation must be shown to be sufficiently serious, and (2) a subjective component in which it must be shown that the offending officials acted with a sufficiently culpable state of mind. See *Handy v. Price,* 996 F.2d 1064, 1067 (10th Cir. 1993); *Miller v. Glantz,* 948 F.2d 1562, 1569 (10th Cir. 1991). As to the objective component, the Tenth Circuit has stated that a condition is sufficiently serious where the condition is one diagnosed by a physician as mandating treatment or that is so obvious even a lay person would easily recognize the necessity for a doctor's attention. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980). As to the subjective prong of this test, a plaintiff

_____

[6]*See Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1315 (10th Cir. 2002) (citation, quotation marks, ellipses, and brackets omitted) ("Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983.").

must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. See *Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). Such deliberate indifference may be shown where prison officials "have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment." *Ramos,* 639 F.2d at 575.

## Defendants Hall and Myers

### Individual Capacity Claims

#### Specific Standard of Review

Defendants Hall and Myers have asserted the defense of qualified immunity in response to Plaintiff's claims against them in their personal capacities. In its recent decision in *Thomson v. Salt Lake County,* 584 F.3d 1304, 1312 (10th Cir. 2009), the Tenth Circuit court set out the legal standard of review to be followed by federal courts in analyzing a claim of qualified immunity at the summary judgment stage. Quoting *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009), the court explained that "[w]hen a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Thomson,* 584 F. 3d at 1312. The scope of Plaintiff's burden and the meshing of traditional summary judgment standards with a qualified immunity analysis was described as follows:

> In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party. *Scott v.*

*Harris*, 550 U.S. 372, 378, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *see Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir.2009) ("The plaintiff must demonstrate *on the facts alleged* both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity.") (emphasis added); *Riggins*, 572 F.3d 1107 (noting that generally "we accept the facts as the plaintiff alleges them"). However, because at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]' " *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir.2008) (quoting *Scott*, 550 U.S. at 380, 127 S.Ct. 1769) (second and third alteration in original); *see also Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1258 (10th Cir.2008).

*Id.*

### Defendant Hall

The parties' statements of material facts together with the affidavits and discovery materials on file, *see* Fed. R. Civ. P. 56(c)(2), reveal that there is no dispute as to the following facts pertaining to Plaintiff's claims against Defendant Hall:

1. The State of Oklahoma Department of Health Jail Inspection Division has established the State Jail Standards setting forth the minimum standards for a jail regarding inmate supervision, control, security, hygiene, food services, physical plant, and staff and training. *See* Doc. No. 42, LCvR56.1(b) Statement ("Defendants' Statement of Facts"), No. 2.

2. In 2007, the State Jail Standards required the PCDC to have access to one or more nearby hospital emergency rooms or health care facilities. The Standards did not require the PCDC to have a medical doctor on site at the facility. *See* Defendants' Statement of Facts, No. 8.

3. Defendant Hall served as the medical transport officer for the PCDC. He was responsible for arranging inmate medical and dental visits, for transporting inmates to medical or dental visits, and for obtaining inmates' prescription medications. Defendant Hall was likewise responsible for determining which

inmates would and would not receive outside medical care. *See* Defendants' Statement of Facts, No. 1; Plaintiff's Statement of Facts, No. 1.[7]

4.  If an inmate's request for medical care appeared to be an emergency, Defendant Hall would immediately take the inmate to the Stillwater Medical Center Emergency Room. If the inmate's request was not an emergency, Defendant Hall would contact the Warren Clinic in Stillwater and request the next available doctor's appointment for the inmate. *See* Doc. No. 42, Exhibit 2, Affidavit of Mark Hall, ¶ 10.

5.  Having determined that Plaintiff needed outside medical care, Defendant Hall contacted the Warren Clinic on July 30, 2007 and arranged an appointment for Plaintiff to see a doctor on August 2, 2007. Typically, when Defendant Hall requests an appointment for an inmate at the Warren Clinic, he is given an appointment of the same date or up to four days later. *See* Plaintiff's Statement of Facts, No. 24; Doc. No. 42, Exhibit 2, Affidavit of Mark Hall, ¶ 11.

6.  On August 2, 2007, Defendant Hall took Plaintiff to the Warren Clinic where he was treated by Dr. Daniel Hill. *See* Plaintiff's Statement of Facts, No. 25.

7.  Dr. Hill "was concerned that [Plaintiff's] infection could be MRSA and mentioned that to [Plaintiff] and [Defendant] Hall from the Sheriff's Department." *See* Doc. No. 47, Exhibit 2, Affidavit of Daniel P. Hill, M.D., ¶ 6.

8.  Dr. Hill gave Plaintiff "an injection of the antibiotic medication Rocephin [and] also provided him a prescription for Bactrim-DS: two pills to be taken twice a day for two weeks, and Rifampin: one pill to be taken daily for five days." *See* Doc. No. 47, Exhibit 2, Affidavit of Daniel P. Hill, M.D., ¶ 7.

9.  Dr Hill "advised [Defendant] Hall, that [Plaintiff] should return for a follow-up visit in two days [and] also advised [Defendant] Hall that [Plaintiff] should be

───────────────

[7]Plaintiff's response to Defendants' summary judgment motion contains a LCvR56.1(b) Statement [Doc. No. 47, p. 2]which addresses, first, Defendants' facts which he maintains are in dispute, *id.* at pp. 2 - 9, Nos. 1 - 21, and, next, those facts to which there is no genuine issue of fact. *Id.* at pp. 9 - 12, Nos. 22 - 38. Plaintiff makes affirmative representations of fact in both portions of his statement; this report, accordingly, refers simply to Plaintiff's Statement of Facts by number.

watched and that if he developed a fever of over 100 degrees or increased pain sooner than the two days, he should be taken to the hospital." *See* Doc. No. 47, Exhibit 2, Affidavit of Daniel P. Hill, M.D., ¶ 8.

10.    Dr. Hill "did not state during [his] August 2, 2007 visit with [Plaintiff] that he should be seen at that time at the emergency room." Rather, if Dr. Hill had "believed he should have been seen at the emergency room at that time, [he] would have told [Defendant] Hall to take him to the emergency room at that time, rather than provide him treatment as [he] did[.]" *See* Doc. No. 42, Exhibit 4, Affidavit of Daniel P. Hill, M.D., ¶ 8.

11.    On the same day as the appointment, Defendant Hall took the prescriptions Dr. Hill had written for Plaintiff to the pharmacy where they were filled and then gave them to a jailer at the PCDC. *See* Doc. No. 42, Exhibit 2, Affidavit of Mark Hall, ¶ 19.

12.    On August 2, 2007 when Defendant Hall "brought [Plaintiff] back from the Warren Clinic, [Defendant Hall] communicated to [Defendant] Myers, as jail administrator, the instructions from Dr. Hill[.]" *See* Doc. No. 47, Exhibit 4, Deposition of Mark Hall, p. 84, lines 4 - 8.

13.    Defendant Hall did not check on Plaintiff after he brought him back from the Warren Clinic on August 2, 2007, because it was not his "job duty." *See* Doc. No. 47, Exhibit 4, Deposition of Mark Hall, p. 44, lines 1 - 4; line 17.

Plaintiff's summary judgment evidence fails to establish any constitutional violation by Defendant Hall within the two-years period preceding the filing of Plaintiff's complaint. On July 30, 2007, upon Plaintiff's request and the day before the beginning of the two-year statute of limitations period, Defendant Hall requested an appointment for Plaintiff at the Warren Clinic; the appointment was scheduled by the Clinic within the customary time frame. Accordingly, as of July 30, 2007, Defendant Hall was not preventing Plaintiff from obtaining treatment for his condition but, instead, was actively seeking medical care on his behalf. "Referral of medically-based grievances to medical personnel demonstrates action,

not indifference, on the part of a corrections officer." *Rose v. Beckham,* 82 Fed. Appx. 662, 665 (10th Cir. 2003).[8] Thereafter, the undisputed evidence is that Defendant Hall transported Plaintiff to his August 2, 2007, appointment where Plaintiff received treatment from Dr. Hill; Dr. Hill confirmed that Plaintiff's condition did not warrant emergency treatment, and Defendant Hall returned Plaintiff to the PCDC; Defendant Hall had the prescriptions ordered by Dr. Hill filled and gave them to a jailer at the PCDC; Defendant Hall passed Dr. Hill's instructions for Plaintiff's care on to Defendant Myers; and, he had no further contact with Plaintiff because it was not his job to do so.

During the time period in question, the evidence is undisputed that Defendant Hall took active and reasonable steps to abate any harm to Plaintiff, and the *subjective* component of the deliberate indifference standard cannot be met. *See Hunt,* 199 F.3d at 1224. In the absence of a violative act by Defendant Hall within the two years before this suit was instituted by Plaintiff, the continuing violation doctrine does not apply. Thus, any pre-July 31, 2007, claims asserted by Plaintiff against Defendant Hall are barred by the statute of limitations. And, because Plaintiff has not established that Defendant Hall violated

---

[8]Plaintiff maintains by affidavit that he "sent at least one more written request for medical treatment to [Defendant] Hall after being moved to the jail annex." *See* Doc. No. 42, Exhibit 1, Affidavit of John David Palmer, ¶ 13. Plaintiff's evidence shows that this move occurred on July 30, 2007, at 6:01 p.m., which would fairly be presumed to be after the Warren Clinic appointment had been made by Defendant Hall. *Id.* at Exhibit 8. Nonetheless, Plaintiff has failed to provide *any* evidence about the specifics of his request and, thus, has failed to demonstrate that such a request should have alerted Defendant Hall that the medical appointment which was already scheduled was no longer an adequate measure of care for Plaintiff's medical needs.

Plaintiff's clearly established constitutional rights within the two-year statutory period, Defendant Hall is entitled to qualified immunity on Plaintiff's claim against him in his individual capacity.

**Defendant Myers**

By his amended complaint, Plaintiff alleged that Defendant Myers was "responsible . . . for the employment, training, supervision and conduct of, the officers and employees of the Payne County Detention Center . . . [and] also participated in the mistreatment of Plaintiff[.]" [Doc. No. 16, p. 3]. In support of these claims and in response to Defendant Myers' claim on summary judgment that he did not violate Plaintiff's constitutional rights, Plaintiff states as fact that when he was returned to the PCDC after his August 2, 2007, appointment with Dr. Hill, his "condition continued to deteriorate [and that d]espite Dr. Hill's instructions that he should be taken to hospital if his condition worsened, Plaintiff's oral and written requests for medical care were not being addressed." Plaintiff's Statement of Facts, No. 10. He further states as fact that "[s]ometime during the day of August 2nd or August 3rd," Defendant Myers came in response to his complaints and told him to "'shut the fuck up or go back to the main jail where you got the disease.'" *Id. See also* Plaintiff's Statement of Facts, No. 16.

With regard to the time frame outside of the two-year period preceding the filing of his case, Plaintiff states as fact that "he did make at least three separate written requests for medical care directed to Hall and/or Myers[.]" Plaintiff's Statement of Facts, No. 11. Next, Plaintiff specifically states as fact that Defendant Myers knew what MRSA was in 2007; that

prior to August, 2007, the Warren Clinic had treated PCDC inmates for MRSA infections that were similar to Plaintiff's; and, that prior to August, 2007, Defendants Hall and Myers had discussions regarding MRSA in the PCDC. Plaintiffs' Statement of Facts, No. 19. Finally, Plaintiff states as fact that Defendant Myers knew that staph infections were dangerous and potentially fatal if not properly treated, Plaintiff's Statement of Facts, No. 35, and that Defendant Myers "did not provide any training to jail employees regarding staph infection, the identification of suspected incidents of infections disease in the jail, and the necessity to notify the Jail Administrator about such cases." Plaintiff's Statement of Facts, No. 36.

The parties' statements of material facts together with the affidavits and discovery materials on file, *see* Fed. R. Civ. P. 56(c)(2), reveal that there is no dispute as to the following facts pertaining to Plaintiff's claims against Defendant Myers:

1.   In July and August, 2007, Defendant Myers was the PCDC Jail Administrator, reporting directly to the Payne County Undersheriff and the Payne County Sheriff. Defendant Myers supervised the overall operation of the PCDC and supervised all persons who worked in the PCDC. *See* Defendants' Statement of Facts, No. 1.

2.   On August 2, 2007 when Defendant Hall "brought [Plaintiff] back from the Warren Clinic, [Defendant Hall] communicated to [Defendant] Myers, as jail administrator, the instructions from Dr. Hill[.]" *See* Doc. No. 47, Exhibit 4, Deposition of Mark Hall, p. 84, lines 4 - 8.[9]

3.   Dr. Hill's instructions were that "[Plaintiff] should return for a follow up visit in two days, but that if Mr. Palmer developed a fever of over 100 degree of

---

[9]Defendants acknowledge in their reply brief that Defendant Hall "passed" the instructions on to Defendant Myers [Doc. No. 50, p. 8].

increased pain sooner than the two days, he should be taken to the hospital." *See* Doc. No. 42, Exhibit 4, Affidavit of Daniel P. Hill, M.D., ¶ 7.

Plaintiff has stated by affidavit that at some point within the thirty-six hours after he was returned to the PCDC from his appointment at the Warren Clinic and before he was taken to the emergency room by PCDC personnel, he told Defendant Myers how sick he was, advised him of Dr. Hill's instructions, and asked to be taken to the emergency room for treatment. He further swears that Defendant Myers refused his request. *See* Doc. No. 47, Exhibit 1, Affidavit of John David Palmer, ¶ 15. Defendant Myers neither admits nor denies that he met with Plaintiff during this time frame; he does, however, swear that he "did not deny a request for medical care made by [Plaintiff]." *See* Doc. No. 42, Exhibit 1, Affidavit of Brandon Myers, M.D., ¶ 17.

Defendant Myers is not entitled to qualified immunity. It has been clearly established since 1976 that a jailer's failure to act in accordance with prescribed medical instructions can give rise to an Eighth Amendment claim. *Estelle,* 429 U.S. at 104-05. The evidence of whether Defendant Myers intentionally did so is in dispute in the form of a classic swearing match, and summary judgment is precluded. Assuming that the continuing violation doctrine applies to a § 1983 claim, there is evidence of a wrongful, injurious act by Defendant Myers during the two year period preceding the filing of the complaint. For the following reasons, however, summary judgment is appropriate as to any claim Plaintiff is attempting to make[10]

---

[10]It is far from clear, for example, whether Plaintiff is asserting a failure to train claim against Defendant Myers. In his summary judgment briefing, Plaintiff focuses only on (continued...)

through his statements of fact as to Defendant Myers' actions during the pre-statutory filing period.

The first such claim by Plaintiff is that "he did make at least three separate *written* requests for medical care directed to Hall and/or Myers[.]" *See* Plaintiff's Statement of Facts, No. 11(emphasis added). Nonetheless, the evidentiary material cited by Plaintiff to support this claim – his affidavit [Doc. No. 47, Exhibit 1, Affidavit of John David Palmer] – fails to do so. The undersigned has carefully reviewed Plaintiff's affidavit and has found *no* reference to a *written* request for medical care directed to Defendant Myers.

As to Plaintiff's attempt to establish that Defendant Myers knew what MRSA was in 2007, the evidence relied upon does not support the assertion; contrary to Plaintiff's statement of fact, Defendant Hall *did not* testify that prior to August, 2007, he and Defendant Myers had discussions regarding MRSA in the PCDC. Rather, Defendant Hall testified that he did not recall any discussion with Defendant Myers about MRSA in 2007. *See* Doc. No. 47, Exhibit 4, Deposition of Mark Stephen Hall, p. 52, lines 12 - 23.

With respect to Plaintiff's claims that Defendant Myers knew that staph infections were dangerous and potentially fatal if not properly treated and that he "did not provide any training to jail employees regarding staph infection, the identification of suspected incidents of infections disease in the jail, and the necessity to notify the Jail Administrator about such

---

[10](...continued)
Defendant Seriff's's alleged failure to train and supervise [Doc. No. 47, pp. 16 - 19]. Nonetheless, the undersigned has addressed any potential claim that could be read as directed against Defendant Myers individually.

cases[,]" *see* Plaintiff's Statement of Facts, Nos. 35 and 36, the supporting evidence relied upon by Plaintiff has no relevance to his medical care. Instead, the evidence is either overly broad, meaningless, or it relates to the issue that Plaintiff has conceded: "At this point in time Plaintiff is not alleging that the actions of Defendants caused him to contract MRSA." [Doc. No. 47, p. 2].

Specifically, the supporting evidence designated by Plaintiff[11] is first, that Defendant Myers did not conduct training as to how infectious diseases can be transferred, *see id.* at Exhibit 5, p. 49, lines 16 - 24. This, however, pertains to controlling the spread of MRSA rather than treating a detainee with the condition. Second, Plaintiff cites to three meaningless lines in a deposition, *id.* at p. 157, lines 11 - 13, leaving the court to speculate as to his point. Finally, Plaintiff states that Defendant Myers testified that he did not train employees with regards to . . . concerns regarding staph infections." *Id.* at p. 169, lines 22 - 25. It is impossible, however, to discern from these four lines of testimony whether the "concerns" were related to medical care, sanitation, the spread of staph, or something else entirely. None of this evidence demonstrates the violation of a constitutional right by Defendant Myers.

Even were the court to determine that the continuing violation doctrine applied in a § 1983 case, because Plaintiff has failed to demonstrate that any of Defendant Myers' pre-July 31, 2007, actions violated a constitutional right, Defendant Myers is entitled to qualified immunity and summary judgment on any claims by Plaintiff arising from those actions.

---

[11]Plaintiff's Statement of Facts, ¶ 36.

Accordingly, it is recommended that Defendant Myers' motion for summary judgment be denied as to Plaintiff's claim that Defendant Myers was deliberately indifferent to Plaintiff's serious medical needs on August 2 or August 3, 2007, and granted in all other respects.

**Defendant Sheriff Bagwell**

Plaintiff has sued Defendant Bagwell in his official capacity as the Sheriff of Payne County "for the establishment of policies either formally or by custom and practice for, and for the employment, training, supervision and conduct of, the officers and employees of the Payne County Detention Center." [Doc. No. 16, p. 2]. Although Plaintiff's amended complaint contains claims that Defendant Sheriff's actions caused him to contract MRSA, on summary judgment Plaintiff has abandoned those claims and maintains that Defendant Sheriff "was deliberately indifferent to his medical needs by virtue of a policy and practice of failing to train and supervise Defendant Myers, Hall, and other employees with regards to identification and provision of medical care to inmates at the jail who contracted staph infections or other contagious diseases." [Doc. No. 47, p. 2].

Any claim against the Payne County sheriff in his official capacity is tantamount to an action against Payne County itself. *See Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) ("Appellant's suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent of a suit against Jackson County."). Additionally, "[a] county or sheriff in his official capacity cannot he held liable for constitutional violations when there was no underlying constitutional violation by any of its officers." *Martinez,* 563 F.3d at 1091(citation and quotation marks omitted).

In this regard, Plaintiff has failed to establish that Defendant Hall committed a constitutional violation within the two year period preceding the filing of this lawsuit; absent any underlying constitutional violation by Defendant Hall within the statutory period, Defendant Sheriff cannot be liable even if his policies, supervision, and training of Defendant Hall were unconstitutional. *Trigalet v. City of Tulsa,* 239 F.3d 1150, 1155-56 (10th Cir. 2001).

As to the actions of Defendant Myers during this same statutory period, the question of whether Defendant Myers refused to provide Plaintiff with the medical care prescribed by Dr. Hill is in dispute. Nonetheless, Defendant Myers has unequivocally acknowledged his awareness that "the PCDC's policy regarding inmate medical care was that no inmate was denied medical care, to include prescription medication, at the PCDC." [Doc. No. 42, Exhibit 1, Affidavit of Brandon Myers, ¶ 10. Thus, if Defendant Myers failed to act in accordance with prescribed medical instructions, he did so in contradiction to what he knew from his training and experience to be PCDC policy. Neither has Plaintiff pointed to any evidence suggesting that Defendant Bagwell had notice from Defendant Myers' prior conduct that he would violate known medical-care policy.

"Although [Plaintiff] may indeed show that [Defendant Hall] has committed the prerequisite underlying Eighth Amendment violation, [Plaintiff] has not taken the subsequent step of linking the possible violation to a municipality custom or policy." *Olsen v. Layton Hills Mall,* 312 F.3d 1304, 1318 (10th Cir. 2002). Defendant Sheriff cannot be liable through vicarious liability. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 691 (1978).

Plaintiff has failed to demonstrate that "the 'execution of the government's policy or custom . . . inflict[ed] the injury'" he allegedly suffered as a result of Defendant Myers' conduct. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989).

Based upon Plaintiff's Statement of Facts, the final remaining claim lodged by Plaintiff against Defendant Sheriff for claimed deliberate indifference within the two-year statutory period is that "Defendant Sheriff had no policy or procedure in place that required, or insured, that instructions given by doctors for medical attention to particular inmates of the Jail, be passed on from one work shift of jailers to the next." Plaintiff's Statement of Facts, ¶ 38. By way of evidentiary support, Plaintiff relies upon Defendant Myers' deposition testimony that his method of ensuring that all three PCDC shifts were aware of a doctor's instructions as to a particular inmate was to rely on communications at shift change [Doc. No. 47, Exhibit 5, Deposition of Brandon Myers, p. 68, lines 18 - 25]. Thus, Plaintiff seeks to hold Defendant Sheriff liable as a result of inadequate training of the PCDC jailers.

Plaintiff acknowledges that Defendant Sheriff's written policy was "that no Jail inmate was denied medical care including prescription medication[.]" Plaintiff's Statement of Facts, ¶ 2. Plaintiff has not demonstrated any general history of deficiencies in this regard or any specific evidence of problems with information exchange at shift change that should have placed Defendant Sheriff on notice that he had a problem with his training program. Plaintiff has failed to establish a pattern of violations and, thus, that Defendant Sheriff acted with deliberate indifference. *See Barney v. Pulsipher,* 143 F.3d 1299, 1308 (10th Cir. 1998).

Neither does this case "fall within the narrow range of circumstances justifying a finding of deliberate indifference absent a pattern of violations." *Id.* The requisite "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable . . . consequence of a [sheriff's] fail[ure] to train an employee in specific skills needed to handle recurring situations[.]" *Id.* at 1307-08 (quotation marks and citation omitted). Plaintiff's claim is that he did not receive all of the medications ordered by Dr. Hill upon his return to the PCDC on August 2, 2007, and that Defendant Sheriff's evidence showing otherwise must have been forged.[12] *See* Plaintiff's Statement of Facts, Nos. 5 and 6. The fact that Plaintiff does not dispute the fact that he received at least some of his medications[13] demonstrates that the PCDC policy of passing on inmate-specific information at shift change was operative; "[s]pecific or extensive training hardly seems

_____

[12]Following the opportunity for discovery, however, Plaintiff has failed to either name or identify the jailer or jailers responsible for the alleged forgery or any other claimed failures. "That omission seriously undermines his attempt to hold the county liable for any actions deliberately taken by the jailer." *Lopez v. LeMaster,* 172 F.3d 756, 760 (10th Cir. 1999).

[13] Plaintiff testified by deposition that he was "pretty sure" he received some medications but did not recall which ones [Doc. No. 42, Exhibit 5, Deposition of John David Palmer, p. 133, lines 1-2; p. 135, lines 1-4]; that he "[v]aguely" recalled having his bandages changed, *id.* at p. 135, line 17 through p. 136, l. 3; that it was "probably accurate" that he received medications on the evening of his visit to Dr. Hill, *id.* at p. 137, lines 3-6; and, that with respect to receiving medications about twenty-four (24) hours after seeing Dr. Hill, he "d[idn't] recall a lot of detail[.]" *Id.* at lines 11-17. Moreover, with regard to his forgery allegations, Plaintiff testified that he might have initialed the medication log differently because he was sick [Doc. No. 50, Exhibit No. 1, Deposition of John David Palmer, p. 130, lines 15 - 25].

necessary for a jailer to know" that it was inappropriate to partially disregard instructions and attempt to cover the lapse through forgery. *Barney,* 143 F. 3d at 1308.

In the absence of any injury to Plaintiff caused by Defendant Sheriff within the two years before this suit was instituted by Plaintiff, the continuing violation doctrine does not apply. Thus, any pre-July 31, 2007, claims asserted by Plaintiff against Defendant Sheriff are barred by the statute of limitations. And, because there is no genuine issue of fact with respect to Plaintiff's claim that Defendant Sheriff violated Plaintiff's clearly established constitutional rights within the two-year statutory period and because Defendant Sheriff is entitled to judgment as a matter of law, summary judgment in favor of Defendant Sheriff is appropriate.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, it is the recommendation of the undersigned Magistrate Judge that Defendant Hall and Bagwell's motion for summary judgment and/or dismissal with prejudice [Doc. No. 42] be granted. It is further recommended that Plaintiff's claims against Defendant Myers in his official capacity be dismissed with prejudice and that summary judgment and/or dismissal with prejudice be granted as to Defendant Myers in his individual capacity except as to Plaintiff's claim – including his claim for punitive damages – that Defendant Myers was deliberately indifferent to Plaintiff's serious medical needs on August 2 or August 3, 2007, by failing to act in accordance with prescribed medical instructions. Finally, it is recommended that Plaintiff's claims against the John Doe Defendants be dismissed.

The parties are advised of their right to object to this Report and Recommendation by November 18, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of October, 2010.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE